In the Matter of the WELFARE OF J.J.P.

No. A11–1146.

Supreme Court of Minnesota.

May 22, 2013.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant Hennepin County Attorney, Minneapolis, MN, for appellant Hennepin County.

Jon Geffen, Arneson & Geffen, PLLC, Minneapolis, MN, for respondent J.J.P.

John Kingrey, Executive Director, Janelle P. Kendall, Stearns County Attorney, Dana D. Erickson, Assistant Stearns County Attorney, Saint Cloud, MN, for amicus curiae Minnesota County Attorneys Association.

Nicole M. Moen, Sarah C.S. McLaren, Fredrikson & Byron, P.A., Minneapolis, MN, for amici curiae Council on Crime and Justice, Legal Rights Center, Children's Law Center of Minnesota, Minnesota Association of Criminal Defense Lawyers, Minnesota State Public Defender, National Alliance on Mental Illness of Minnesota, University of Minnesota Child Advocacy and Juvenile Justice Clinic, Volunteer Lawyers Network, and YMCA of the Greater Twin Cities.

Mark A. Haase, Minneapolis, MN, for amicus curiae Minnesota Corrections Association.

Lindsay Davis, Diana Ky, Law Offices of Southern Minnesota Regional Legal Services, Inc., Saint Paul, MN; and Charles H. Thomas, Mankato, MN, for amicus curiae Southern Minnesota Regional Legal Services, Inc.

Joanna Woolman, Megan Schouvieller, Saint Paul, MN, for amicus curiae William Mitchell Law Clinic.

## OPINION

DIETZEN, Justice.

This case presents the question of whether Minn.Stat. § 260B.198, subd. 6 (2012), authorizes the district court to expunge juvenile delinquency records held by executive branch agencies. Respondent J.J.P., who was adjudicated delinquent of felony burglary and misdemeanor theft, obtained a district court order expunging his juvenile delinquency records held by the judicial branch. More recently, J.J.P. petitioned the district court to expunge his juvenile delinquency records held by the executive branch. The district court denied the request, but the court of appeals reversed. We conclude that under section 260B.198, subdivision 6, the authority of the district court to expunge juvenile delinquency records in executive branch files is limited to the order adjudicating the juvenile delinquent. Further, to determine whether expungement is advisable within the meaning of section 260B.198, subdivision 6, we conclude that the district court must weigh the benefit to the petitioner against the detriment to the public and the burden on the court. Thus, we affirm in part, reverse in part, and remand.

When J.J.P. was 17 years old, he broke into a golf course clubhouse and removed food and beverage items from the snack bar. Ten days later, he shoplifted a pair of shoes from a department store. The State charged J.J.P. with felony second-degree burglary and misdemeanor theft. J.J.P. admitted to the charges, and in September 2002, the district court adjudicated him delinquent of both offenses.

In February 2008, the district court considered and granted J.J.P.'s pro se petition to expunge records documenting his delinquency history. Yet the court limited its order to "[a]ll official records held by the Fourth Judicial District Court—Juvenile Division, other than the non-public records retained by the Bureau of Criminal Apprehension, including all records relating to

arrest, indictment or complaint, trial, dismissal and discharge."

Currently, J.J.P. works as a licensed emergency medical technician and a firefighter. Because his career goal is to be a paramedic, he enrolled in the required clinical coursework at a local college. At the college's request, the Department of Human Services (DHS) conducted a background check to determine whether J.J.P. was qualified to serve as a paramedic under state law. Based upon J.J.P.'s delinquency-adjudication records in the Bureau of Criminal Apprehension (BCA) file, DHS concluded that J.J.P. was barred from "any position allowing direct contact with, or access to, persons receiving services from programs licensed by DHS and the Minnesota Department of Health." As a result, DHS disqualified J.J.P. from becoming a paramedic.[1]

In November 2010, J.J.P. petitioned the district court to expunge his executive branch records, including those held by the BCA, DHS, and Minnesota Department of Health (MDH), on the ground that Minn.Stat. § 260B.198, subd. 6, permitted the court to expunge all of his juvenile delinquency records.[2] The district court denied the petition. The court concluded that section 260B.198, subdivision 6 authorized it to expunge executive branch records, and that its exercise of that statutory authority did not implicate the separation-of-powers doctrine. But the court also concluded that J.J.P. did not sufficiently demonstrate a case for expungement under Minn.Stat. ch. 609A (2012), which governs expungement of adult criminal records; that J.J.P. "would not suffer undue hardship" because he could seek a

set aside; and that J.J.P. failed to show that the "benefits of granting an expungement . . . do not outweigh the potential detriment to society."

The court of appeals reversed, concluding that the district court abused its discretion in denying J.J.P.'s petition. *In re Welfare of J.J.P.*, 811 N.W.2d 125, 132–33 (Minn.App.2012). The court concluded that the phrase "adjudication of delinquency" in section 260B.198, subdivision 6 granted the district court expansive authority to expunge all juvenile delinquency records held by executive branch agencies, and that expunging executive branch records does not create a separation-of-powers conflict. *Id.* at 128–30 (internal quotation marks omitted). The court also concluded that the guidelines set forth in Minn. R. Juv. Delinq. P. 15.05, which address the imposition of a disposition in a delinquency case, rather than the standards articulated in chapter 609A, govern the district court's discretion to expunge juvenile delinquency records. *J.J.P.*, 811 N.W.2d at 130–32. Consequently, the court remanded for the district court to apply those guidelines to J.J.P.'s petition. *Id.* at 133.

I.

The State argues the phrase "adjudication of delinquency" in section 260B.198, subdivision 6 should be interpreted narrowly to apply only to juvenile delinquency records prepared and maintained by the judicial branch, and not to records forwarded by the judicial branch to the executive branch or to records separately

---

1. J.J.P. requested reconsideration, and DHS set aside the disqualification for 12 months under Minn.Stat. § 245C.22, subd. 4(a) (2012), concluding that J.J.P. posed a low risk of harm to those he would serve as a paramedic.

2. J.J.P. petitioned the district court for expungement solely under the court's statutory authority; he did not invoke the court's inherent authority to order expungement.

maintained by executive branch agencies.[3] J.J.P. counters that "adjudication of delinquency" is not limited to judicial branch records, but logically extends to all records regarding the adjudication of delinquency irrespective of their location.[4] J.J.P. asserts that the court can expunge the "adjudication of delinquency" only if it can expunge all documentation of that adjudication.

Statutory interpretation is a question of law, which we review de novo. *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 649 (Minn.2012). The goal of all statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn.Stat. § 645.16 (2012). In interpreting statutory language, we give words and phrases their plain and ordinary meaning. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). Further, we read a statute as a whole and give effect to all of its provisions. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). Our first step in interpreting a statute is to examine the text of the statute to determine whether the language is ambiguous. *Id.* When the statutory language is clear and free of ambiguity, we enforce the plain language of the statute and do not explore its spirit or purpose. *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn.2010); *see also* Minn.Stat. § 645.16 (2012).

Minnesota Statutes § 260B.198, subd. 6, provides:

> Except when legal custody is transferred under the provisions of subdivision 1, clause (4), the court may expunge the adjudication of delinquency at any time that it deems advisable.

Minn.Stat. § 260B.198, subd. 6.[5] The parties and amici vigorously dispute the meaning of the phrase "adjudication of delinquency," and the phrase "at any time that [the court] deems advisable."

Before interpreting the statute, it is first necessary to review the statutory framework for the judicial and executive branches to prepare, maintain, and share juvenile delinquency records. Then, we will determine whether the juvenile delinquency records J.J.P. seeks to have expunged fall within the scope of the district court's authority under section 260B.198, subdivision 6.

Generally, Minnesota's judicial and executive branches are statutorily required to keep juvenile delinquency records. Law enforcement and district courts prepare and maintain these records, and then forward them to the BCA. The BCA collects these records and shares them with DHS and other agencies, which review the records to conduct background checks or for other purposes. Three statutory chapters regulate this process: Minn.Stat. ch. 299C (2012) (law enforcement records), Minn. Stat. ch. 260B (2012) (district court records), and Minn.Stat. ch. 245C (2012) (DHS background-check records).

Chapter 299C requires law enforcement to prepare and maintain records of juveniles arrested, charged with, or adjudicated delinquent of certain offenses. These records comprise identifying information, including fingerprints, photographs, distinctive physical marks, known aliases, and

---

**3.** Amicus curiae Minnesota County Attorneys Association filed a brief in support of the position taken by the State.

**4.** Amici curiae Council on Crime and Justice, et al.; Minnesota Corrections Association; Southern Minnesota Regional Legal Services, Inc.; and William Mitchell Law Clinic filed a brief in support of the position taken by J.J.P.

**5.** Although inapplicable here, Minn.Stat. § 260B.198, subd. 1(4) (2012), allows the district court to "transfer legal custody by commitment to the commissioner of corrections."

a DNA sample. Minn.Stat. §§ 299C.10, subd. 1(a)(2), 299C.105, subd. 1(a)(3), 299C.11, subds. 1(a), 2(a). Law enforcement then forwards these records to the BCA, which must keep them private and retain them until the offender, if he committed a felony or gross misdemeanor, turns 28 years old. Minn.Stat. § 299C.095, subds. 1, 2(e). In addition, the BCA collects other arrest and investigation records related to felony offenses. *See* Minn.Stat. §§ 299C.12, 299C.155, subd. 2.

Chapter 260B requires district courts to maintain juvenile delinquency records. These records include the "petition, summons, notice, findings, orders, decrees, judgments, and motions." Minn.Stat. § 260B.171, subd. 1(a). Although normally kept private, the district court may grant the public access to the records if the person is charged with a felony and was at least 16 years old when the felony was committed. Minn.Stat. §§ 260B.163, subd. 1(c), 260B.171, subd. 4. The court also forwards certain records to the BCA, including copies of the delinquency petition and the order of the adjudication of delinquency, and the BCA collects these records, along with those from law enforcement, to generate a computerized juvenile history record database. Minn.Stat. §§ 260B.171, subd. 2(a)–(b), 299C.095, subd. 1. The court retains its records for offenders who committed a felony or gross misdemeanor until the offender reaches the age of 28. Minn.Stat. § 260B.171, subd. 1(b).

Chapter 245C requires DHS to review juvenile delinquency records when conducting background checks on prospective employees of state-licensed programs. Minn.Stat. § 245C.03, subd. 1(a)(3). Un-

der the statute, DHS reviews juvenile delinquency records collected by the BCA. Minn.Stat. § 245C.08, subds. 1(a)(4), 3(a), 4(a). If the records reveal that the applicant admitted to, was found to have committed, or by a preponderance of the evidence did commit a disqualifying offense, and DHS finds that the "individual poses an imminent risk of harm to persons served by the program where the individual studied will have direct contact," DHS bars the applicant from the program. Minn.Stat. §§ 245C.14, subd. 1(a), 245C.16, subd. 2(a)(1). A felony burglary conviction disqualifies the applicant for 15 years; a misdemeanor theft conviction disqualifies the applicant for 7 years. Minn.Stat. § 245C.15, subds. 2(a), 4(a).

Here, J.J.P. petitioned the district court to expunge his juvenile delinquency records held by the BCA and DHS.[6] Thus, there are four categories of juvenile delinquency records at issue in this case: (1) records law enforcement prepared and forwarded to the BCA consisting of arrest and investigation records; (2) records the district court forwarded to the BCA consisting of the delinquency petition and the order adjudicating J.J.P. delinquent; (3) records the BCA collects in its juvenile history record database consisting of summaries and data entries regarding J.J.P.'s delinquency history; and (4) records DHS obtained from the BCA.

With this understanding of how J.J.P.'s juvenile delinquency records were prepared, maintained, and shared between the judicial and executive branches, we return to the question of the meaning of "adjudication of delinquency" in section 260B.198, subdivision 6. J.J.P. contends the statute gives the district court broad authority to expunge all juvenile delinquency records in

---

**6.** Although J.J.P.'s expungement petition also referred to MDH records, the record before us does not reflect that MDH possesses any records related to J.J.P.'s delinquency history. We therefore limit our discussion to J.J.P.'s BCA and DHS records.

executive branch files to eliminate the adverse impact of the adjudication of delinquency.

■■ The canons of construction provide that technical words and phrases be given their special or defined meaning. *Staab v. Diocese of St. Cloud,* 813 N.W.2d 68, 72 (Minn.2012); *see also* Minn.Stat. § 645.08(1) (2012). The phrase "adjudication of delinquency" in section 260B.198, subdivision 6 is a legal phrase that has acquired a special meaning in juvenile courts. The word "adjudicate," the root of the word "adjudication," means "[t]o rule upon judicially," or to "adjudge." *Black's Law Dictionary* 45 (8th ed.2004). The Rules of Juvenile Delinquency Procedure, which govern the procedure in Minnesota's district courts for all juvenile delinquency matters and apply to the proceedings in this case, explain the meaning of the "adjudication of delinquency." *See* Minn. R. Juv. Delinq. P. 1.01. Specifically, when a juvenile is charged by petition with a felony or gross misdemeanor offense, and the court finds the charge to be proved, the court either adjudicates the juvenile delinquent or continues the case and stays the adjudication. Minn. R. Juv. Delinq. P. 6.03, subd. 1, 15.05, subd. 1; *see also* Minn. Stat. § 260B.198, subd. 1. If the court adjudicates the juvenile delinquent, its decision is a final, appealable order. Minn. R. Juv. Delinq. P. 21.03, subd. 1(A)(3).

We conclude the phrase "adjudication of delinquency" in section 260B.198, subdivision 6 means the court order that adjudicates the juvenile delinquent. The acquired, special meaning of the phrase "adjudication of delinquency" in the juvenile court system is limited to the order adjudicating the juvenile delinquent. The

phrase "adjudication of delinquency" plainly refers to a single event—an order—that adjudicates the juvenile delinquent. The order documents the event in which the court determines that the charge against the juvenile has been proven. Moreover, the additional documents in executive branch files, such as arrest and investigation records or the petition for delinquency, do not logically fall within the "adjudication of delinquency." Instead, those documents precede the determination by the juvenile court to adjudicate the juvenile delinquent.

We discern no legislative intent to broadly extend the acquired, special meaning of the phrase "adjudication of delinquency" to apply to the entire executive branch file of the juvenile. Had the Legislature intended to include all records in executive branch files that precede the court's adjudication of delinquency, it could have easily said so. *Compare* Minn.Stat. § 260B.198, subd. 6 (authorizing the expungement of the "adjudication of delinquency"), *with* Minn.Stat. §§ 609A.01, 609A.02, subds. 1, 3 (authorizing the expungement of "criminal records" and allowing a person to file a petition to seal "all records relating to an arrest, indictment or information, trial, or verdict"). But the Legislature did not. Consequently, reading "adjudication of delinquency" more broadly to include all juvenile delinquency records would improperly add language to the statute that does not exist. *Premier Bank,* 785 N.W.2d at 760 (stating that we will not add "words or meaning to a statute that are purposely omitted or inadvertently overlooked" (citation omitted) (internal quotation marks omitted)).[7]

---

7. The concurrence relies on Minn.Stat. § 299C.095, subd. 2, to assert the Legislature must have authorized expungement of all juvenile delinquency records in executive branch files because it created a separate scheme for the automatic destruction of those records. According to the concurrence, section 299C.095, subdivision 2 requires the BCA

We therefore conclude that section 260B.198, subdivision 6 does not authorize the district court to expunge other records in executive branch files that precede the order adjudicating the juvenile delinquent.[8]

■ The State contends the statute limits the district court's authority to expunge only records in the judicial branch file and does not extend to records in executive branch files. But the State's interpretation fails to give effect to the word "expunge." "[E]xpunge" means "[t]o erase or destroy." *Black's Law Dictionary* at 621; *see also Webster's Third New International Dictionary* 803 (1976) (defining "expunge" as "to strike out, obliterate, or mark for deletion" or "to treat or cause to be regarded as nonexistent"). Previously, we have indicated that "expungement" means "[t]o erase all evidence of the event as if it never occurred." *Barlow v. Comm'r of Pub. Safety*, 365 N.W.2d 232, 233 (Minn.1985) (internal quotation marks omitted). To interpret the statute to authorize the district court to expunge the delinquency-adjudication order in the judi-

cial branch file but not that same record in executive branch files is illogical and contrary to the plain meaning of the statute. We discern no legislative intent in the statute to conclude that the district court lacks statutory authority to expunge the order adjudicating the juvenile delinquent in executive branch files.

Consequently, we conclude that under section 260B.198, subdivision 6, the district court is authorized to expunge from executive branch files the court order adjudicating the juvenile delinquent when the district court deems it advisable. Additionally, the district court has the authority to expunge any reference to that order in executive branch files, including in records collected by the BCA or reviewed by DHS.[9]

The State also contends that interpreting section 260B.198, subdivision 6 to authorize the district court to expunge records in executive branch files conflicts with DHS's authority to conduct background checks with those records, and results in a violation of the separation of powers be-

to destroy immediately, or once the offender reaches the age of 21, all of its records for juvenile offenders who are not adjudicated delinquent, and therefore the Legislature intended destruction of those records when the district court orders expungement for juvenile offenders who are adjudicated delinquent. We disagree. Section 299C.095, subdivision 2 sets forth the time frame under which the BCA retains juvenile delinquency records. Most applicable here, subdivision 2(e) requires the BCA to retain records preceding the order adjudicating the juvenile delinquent until the offender reaches the age of 28. That provision reflects a policy judgment of the Legislature that juvenile offenders who are ultimately adjudicated delinquent pose a greater risk to reoffend than juvenile offenders who are not adjudicated delinquent. Law enforcement benefits from the retention of those records to assist in any potential future investigations.

8. The concurrence claims DHS would find all of the other BCA records when conducting a

background check and could infer from the existence of those records that the juvenile offender was adjudicated delinquent despite expungement of the order adjudicating the juvenile delinquent. But the concurrence ignores Minn.Stat. § 245C.08, subd. 1(b), which prohibits DHS from considering, let alone inferring, that the juvenile offender was adjudicated delinquent if the delinquency-adjudication order has been expunged.

9. The concurrence alleges that expungement of the order adjudicating the juvenile delinquent is "weak" and "illusory." We disagree. The statute provides a significant benefit to J.J.P. and other juvenile offenders. Specifically, when the district court expunges the order adjudicating the juvenile delinquent, DHS may no longer disqualify a juvenile offender in a background check on the basis that he was adjudicated delinquent of an offense. *See* Minn.Stat. § 245C.08, subd. 1(b).

tween the judicial and executive branches. The Minnesota Constitution provides that the powers of government shall be separated into the legislative, executive, and judicial branches, and that no branch may exercise any of the powers properly belonging to the other branch. Minn. Const. art. III, § 1; *accord Brayton v. Pawlenty,* 781 N.W.2d 357, 364–65 (Minn.2010).

Generally, the constitution empowers the legislative branch to legislate or make the laws, the executive branch to execute or carry out the laws, and the judicial branch to interpret and enforce the laws. *See* Minn. Const. art. IV, §§ 17–23, art. V, § 3, art. VI, § 1; *accord Brayton,* 781 N.W.2d at 364–65. But under the constitution, no branch of government may usurp or diminish the powers committed to another co-equal branch of government. Minn. Const. art. III, § 1; *accord In re Civil Commitment of Giem,* 742 N.W.2d 422, 429 (Minn.2007). We have noted separation-of-powers concerns when discussing the district court's *inherent* authority to expunge adult criminal records held by executive branch agencies. *See State v. S.L.H.,* 755 N.W.2d 271, 278–79 (Minn. 2008) (stating that the district court should afford other branches of government deference and "exercise restraint before invoking inherent expungement authority over records held outside the judicial branch"). But we have not expressed these same concerns when the district court exercises its *statutory* authority to expunge.

■ The Legislature has enacted two statutes that provide separate grants of authority to the judicial and executive branches that are relevant to the separation-of-powers issue presented. Section 260B.198, subdivision 6 authorizes the district court to expunge the order adjudicating the juvenile delinquent in executive branch files. Additionally, section 245C.08 authorizes DHS to review juvenile delinquency records when conducting background checks. But DHS's authority to review such records is limited by statute. Specifically, Minn.Stat. § 245C.08, subd. 1(b), provides that DHS may consider juvenile delinquency records "unless the [DHS] commissioner received notice of the petition for expungement and the court order for expungement is directed specifically to the commissioner." Consequently, if the section 245C.08, subdivision 1(b) requirements are met, DHS is statutorily precluded from considering an expunged delinquency-adjudication order when conducting background checks.

We conclude the authority of the district court under section 260B.198, subdivision 6 to expunge the order adjudicating a juvenile delinquent in executive branch files does not usurp or diminish the power of DHS to conduct background checks of individuals adjudicated delinquent, and therefore does not violate the separation of powers. When the district court exercises its statutory authority to expunge a delinquency-adjudication order in executive branch files, it merely exercises its power to enforce a duly enacted statute that limits DHS's authority. *See In re Welfare of J.B.,* 782 N.W.2d 535, 549 (Minn.2010) (concluding that the district court's enforcement of statutorily imposed obligations on counties did not violate the separation of powers). Similarly, when DHS exercises its statutory authority to conduct a background check with records collected by the BCA, it merely exercises its power to carry out the mandates of the statute, which explicitly prohibits it from considering expunged records. *See In re Qwest's Wholesale Serv. Quality Standards,* 702 N.W.2d 246, 259 (Minn.2005) (explaining that administrative agencies are creatures of statute, retain only those powers granted to them by statute, and

must act within their statutory authority). Consequently, the district court does not usurp or diminish DHS's authority to conduct background checks when it expunges from executive branch files an order adjudicating a juvenile delinquent.

Moreover, the two statutory grants of authority to conduct background checks and to expunge the order adjudicating the juvenile delinquent are separate and distinct, and do not conflict with one another. It is true that the expungement of a delinquency-adjudication order limits what DHS may review when conducting background checks. But section 245C.08, subdivision 1(b) clearly indicates that the Legislature intended to prohibit DHS from reviewing records validly expunged by the district court. Therefore, there is no conflict between the two statutory grants of authority.[10]

## II.

■ We next address the meaning of the district court's authority under section 260B.198, subdivision 6 to expunge an adjudication of delinquency "at any time that it deems advisable." The State argues, and the district court agreed, that the criteria set forth in chapter 609A should guide the court's decision. J.J.P. argues, and the court of appeals agreed, that the factors articulated in Minn. R. Juv. Delinq. P. 15.05 should apply.

Section 260B.198, subdivision 6 does not define what "advisable" means or reference any other statutory standards. Commonly, that which is "advisable" refers to that which is "expedient" or "prudent." *Webster's Third New International Dictionary* at 32. Thus, the Legislature granted the district court discretion to determine when expungement of an order adjudicating the juvenile delinquent is appropriate.

■ In determining whether expungement was appropriate, the district court applied the standards that govern expungement of adult criminal records under chapter 609A.[11] But the standards from the criminal-expungement statute, chapter 609A, do not govern the expungement of delinquency-adjudication records under the delinquency-expungement statute, section 260B.198, subdivision 6. Specifically, the criminal-expungement statute "provides the grounds and procedures for expungement of *criminal records.*" Minn. Stat. § 609A.01 (emphasis added). An adjudication of delinquency, however, does not result in a criminal conviction or a criminal record. The Legislature treats an adjudication of delinquency as distinct from a criminal conviction. *See* Minn.Stat. § 260B.245, subd. 1(a) (stating that '[n]o adjudication upon the status of any child in the jurisdiction of the juvenile court shall operate to impose any of the civil disabilities imposed by conviction, nor shall any child be deemed a criminal by reason of

10. Because the statute is not ambiguous, it is not necessary to address the State's contentions that our interpretation is contrary to the legislative intent at the time of enactment or that our interpretation will lead to an absurd result. *See U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 377 (Minn. 2011) (explaining that this court only considers extrinsic evidence of the Legislature's intent when the statute is ambiguous); *Schatz*, 811 N.W.2d at 651 (stating that the rule of construction that the Legislature did not intend an absurd result applies to an unambiguous statute only in the rare case when "the

plain meaning of the statute 'utterly confounds' the clear legislative purpose").

11. These standards require the petitioner to show by "clear and convincing evidence that [expungement] would yield a benefit to the petitioner commensurate with the disadvantages to the public and public safety of: (1) sealing the record; and (2) burdening the court and public authorities to issue, enforce, and monitor an expungement order." Minn. Stat. § 609A.03, subd. 5(a).

this adjudication, *nor shall this adjudication be deemed a conviction of crime,* except as otherwise provided in this section or section 260B.255." (emphasis added)). By its very terms, chapter 609A cannot control a petition brought under section 260B.198, subdivision 6 to expunge a delinquency-adjudication order.[12]

The court of appeals adopted the principles that control delinquency dispositions, which require the court to state "why public safety and the best interests of the child are served by the disposition ordered." Minn. R. Juv. Delinq. P. 15.05, subd. 2(A)(1). But the expungement of the order adjudicating the juvenile delinquent is not an authorized disposition, and therefore the principles that govern delinquency dispositions are not applicable. Minnesota Statutes § 260B.198, subd. 1, which defines the dispositions available to the district court, does not include expungement. Further, the standard in Minn. R. Juv. Delinq. P. 15.05, subd. 2—primarily "why public safety and the best interests of the child are served by the disposition ordered"—is inappropriate when an adult requests expungement of juvenile delinquency records. The "best interests of the child" are no longer relevant when the petitioner seeking expungement is no longer a child.

We conclude that under section 260B.198, subdivision 6, the district court's discretion should be guided by a balancing test that examines whether expungement of the order adjudicating the juvenile delinquent would yield a benefit to the petitioner that outweighs the detriment to the public in sealing the record and the burden on the court in issuing, enforcing, and monitoring the expungement order. This balancing test weighs the petitioner's interest in pursuing education, employment, or housing without barriers imposed by delinquency-adjudication records, against the public's interest in accessing those records to evaluate the potential public safety risk posed by the petitioner. The petitioner bears the burden of proving by a preponderance of the evidence that the benefit to the petitioner outweighs the detriment to the public and the burden on the court. *See C.O. v. Doe,* 757 N.W.2d 343, 352–53 (Minn.2008) (stating that when a statutorily created cause of action does not identify the applicable burden and standard of proof, the party seeking relief from the statute generally bears the burden of proof under the preponderance of the evidence standard).

The district court denied J.J.P.'s expungement petition because J.J.P. failed to demonstrate a case for expungement under chapter 609A. Instead, the district court should decide if the petition merits expungement by applying the balancing test we articulate here to the specific facts and circumstances of the case. Thus, we remand for the district court to reconsider J.J.P.'s expungement petition under an approach consistent with this opinion.

---

**12.** The State asserts that disregarding the provisions in the criminal-expungement statute will cause several negative ramifications. It notes that the statute contains limits on the district court's power to grant expungement of adult criminal records relating to the continued ineligibility of a violent offender to own a firearm, the procurement of DNA samples, and the ability of law enforcement to access expunged records. *See* Minn.Stat. § 609A.03, subds. 5a, 7. We will not ignore the plain language of Minn.Stat. § 609A.01, subd. 1, which limits the application of chapter 609A, to address the consequences of a particular interpretation. *See* Minn.Stat. § 645.16(6) (allowing the intention of the Legislature to be determined from, among other things, "the consequences of a particular interpretation" when the words of a statute are ambiguous). The State's concerns are properly directed to the Legislature.

Affirmed in part, reversed in part, and remanded.

ANDERSON, PAUL H., Justice (concurring).

I concur with the majority's conclusion that a district court has the authority to order the expunction—or expungement—of an order adjudicating delinquency from executive branch records. I also agree with the majority that, when a district court considers expungement under Minn. Stat. § 260B.198, subd. 6 (2012), the court should be guided by a test that balances whether expungement would yield a benefit to the petitioner that outweighs the detriment to the public in sealing the record and burden on the court in issuing, enforcing, and monitoring the expungement order. *See State v. C.A.,* 304 N.W.2d 353, 358 (Minn.1981). But I write separately because the majority's description construes the juvenile-record-expungement provision within Minn.Stat. § 260B.198, subd. 6, too narrowly. I conclude that the expungement provision embedded in the statute empowers far broader action by district courts to seal records than the majority concludes is allowed. Therefore, I part ways with the majority's analysis on the central issue in this case: the contours of our core judicial functions and the expungement authority of the judicial branch of government.

As discussed at length in another opinion we issue today, *State v. M.D.T.,* 831 N.W.2d 260, No. A11–1285, 2013 WL 2220826, slip op. (Minn. May 22, 2013) (Anderson, Paul. H., J. dissenting), I conclude that, in addition to the statutory bases for expungement, the judiciary's inherent authority allows courts to expunge a significant number of criminal records. *See* Minn.Stat. ch. 609A (2012); *C.A.,* 304 N.W.2d at 353. But, as the majority properly acknowledges, courts have an even broader statutory authority to expunge records related to juvenile delinquency than they have over general criminal records. This is true because the Legislature has expressly granted courts more authority within the statute governing the expungement of juvenile records, Minn.Stat. § 260B.198, subd. 6, than the Legislature granted within the statute governing the expungement of adult criminal records, Minn.Stat. ch. 609A. While the majority acknowledges that courts have express authority to expunge records in the present case, the majority fails to appreciate the full extent of the expungement authority expressly granted by the Legislature in Minn.Stat. § 260B.198, subd. 6. Thus, I am compelled to write separately.

The juvenile-record-expungement provision within Minn.Stat. § 260B.198, subd. 6, reads in pertinent part as follows: "the [district] court may expunge the adjudication of delinquency at any time that it deems advisable." My conclusion as to the extent of the authority granted to courts in this subdivision rests on the plain meaning of two key words within this provision: "adjudication" and "expunge." *Black's Law Dictionary* defines "adjudication" as "[t]he legal *process* of resolving a dispute; the *process* of judicially deciding a case." *Black's Law Dictionary* 45 (8th ed.2004) (emphasis added). In both clauses of *Black's* definition, the *process* of adjudication is invoked, meaning that the definition must include more than just the final act in the legal process—here, the order adjudicating delinquency. *See id.* Adjudication also encompasses the entire legal process leading up to the order adjudicating delinquency—the "legal process of resolving" the dispute—a significant component of the definition. *Id.* The majority deletes this component from its definition of adjudication. Thus, I conclude that the plain meaning of "adjudication" as used within

the statute applies to all four of the types of records described by the majority.[1]

For the majority's holding to make sense, it must add words to the statute that the Legislature saw fit not to include in the first place. More specifically, the majority must take the Legislature's wording—that courts "may expunge the adjudication of delinquency"—and change that to read "may expunge the *order adjudicating* delinquency"—thereby both substantively and substantially altering the plain language of the statute. As the highest appellate court in our state, we are loathe to read words into a statute unless it is absolutely necessary. We have said that "[i]n the absence of ... guidelines, this court should not manufacture them, that is the province of the legislature. Accordingly, we decline to read into [the statute] *restrictions or guidelines that the legislature has not included.*" *Phelps v. Commonwealth Land Title Ins. Co.,* 537 N.W.2d 271, 274 (Minn.1995) (emphasis added). In *State v. Harris,* we said that "[h]ad the legislature intended to modify the duties and powers of judicial officers, it would have done so explicitly, as it did [in another instance]." 667 N.W.2d 911, 917 (Minn. 2003) (citing *Phelps,* 537 N.W.2d at 274). To reach the conclusion that it does today, the majority departs from our long-standing approach to interpreting statutes and effectively rewrites the juvenile-record-expungement law of Minnesota—and does so under what it claims is a plain meaning analysis.

Even if we were to adopt the majority's unsustainably narrow definition of "adjudication," the statute's plain language still mandates expungement of more records than the majority describes. This result becomes evident when we focus on the interaction between the plain meaning of "expunge" and the statutory scheme governing the maintenance and destruction of juvenile-delinquency records.

The application of the common understanding of the word "expunge" would allow broad action by a district court. This common understanding emanates from the same definition of "expunge" that the majority adopts. The majority draws on both *Black's Law Dictionary* and *Webster's Third New International Dictionary* to define "expunge," and notes that "expunge" means "[t]o erase or destroy," *Black's Law Dictionary* at 621, or "to strike out, obliterate, or mark for deletion," *Webster's Third New International Dictionary* 803 (1976). The majority also cites our prior case law, where we stated that "expungement" means "[t]o erase all evidence of the event as if it never occurred." *Barlow v. Comm'r of Pub. Safety,* 365 N.W.2d 232, 233 (Minn.1985).

A full understanding of the foregoing definitions of "expunge" requires us to look at some of the words used to define "expunge." Both *Black's* and *Webster's* use "erase," to define "expunge." *Black's* states that "erase" means "[t]o rub or scrape out (something written); to obliterate" and "[t]o seal (criminal records) from disclosure," *Black's* at 621, and *Webster's* echoes that definition, adding that to erase means "to remove from existence or memory," *Webster's* at 770. *Webster's* also uses "strike out" to define "expunge," and

---

1. Specifically, the four categories of juvenile-delinquency records at issue in this case are: (1) records law enforcement prepared and forwarded to the Bureau of Criminal Apprehension (BCA) consisting of arrest and investigation records; (2) records the district court forwarded to the BCA consisting of the delinquency petition and the order adjudicating J.J.P. delinquent; (3) records the BCA collects in its juvenile history record database consisting of summaries and data entries regarding J.J.P.'s delinquency history; and (4) records the Department of Human Services (DHS) obtained from the BCA.

"strike out," in turn, means "to delete, efface or cancel." *Webster's* at 2263. Finally, "obliterate," used directly by *Webster's,* and used by inference (through the definition of "erase") by *Black's,* means "to remove from significance and bring to nothingness" and "to remove utterly from recognition, cognizance, consideration, or memory." *Id.* at 1557. Pulling together these several, various definitions, along with the definition of "expunge" that we used in *Barlow,* it is evident that "to expunge" a record, as expressly authorized in this instance by Minn.Stat. § 260B.198, subd. 6, must mean more than simply sealing an order adjudicating delinquency. The plain meaning of expunge is to make it as if the order adjudicating delinquency in question never existed at all: to "obliterate" it, *Webster's* at 770; to "remove [it] utterly from ... memory," *Black's* at 1557; or, as we said in *Barlow,* to make it as if the order adjudicating delinquency had "never occurred," 365 N.W.2d at 233.

Thus, the majority's holding does not give effect to the plain meaning of "expunge" when that meaning is read in conjunction with the statutory scheme in Minn.Stat. § 299C.095 (2012), which governs the maintenance and destruction of "juvenile history records"[2] by the Bureau of Criminal Apprehension (BCA). That legislatively mandated scheme creates a waterfall approach under which the BCA is required to destroy juvenile-history records within certain time periods. *See* Minn.Stat. § 299C.095, subd. 2. The BCA's ability to maintain juvenile-history records is as follows. The Legislature requires the BCA to destroy a child's juvenile-history records within six months after an arrest, unless the child is referred to a diversion program or a petition for delinquency has

been filed against the child. *Id.,* subd. 2(b). If a petition for delinquency is filed against a child but subsequently dismissed, the Legislature requires the BCA to destroy that child's juvenile-history records as soon as the BCA receives notice from a court that the delinquency petition has been dismissed. *Id.,* subd. 2(c). If a child has been referred to a diversion program, the Legislature requires the BCA to destroy that child's juvenile-history records when the child reaches the age of 21. *Id.,* subd. 2(d). Likewise, if a petition for delinquency is filed against a child but is subsequently continued for dismissal, the Legislature requires the BCA to destroy the child's juvenile-history records when the child reaches the age of 21. *Id.* Finally, if a petition for delinquency is filed against a child and either that petition is stayed without adjudication or the child is found to have committed a felony or gross misdemeanor, then the Legislature requires the BCA to destroy the child's juvenile-history records when the child reaches the age of 28. *Id.,* subd. 2(e).

J.J.P. was approximately 25 years old when the current expungement proceedings began. Under the Legislature's scheme as outlined above, in the absence of an order adjudicating J.J.P. delinquent or a stay of adjudication, the BCA would already have been required to destroy J.J.P.'s juvenile-history records. Similarly, if a district court deems it advisable to "expunge" J.J.P.'s adjudication of delinquency—or the adjudication of delinquency of any similarly situated petitioner— then that court must be empowered to make it as if the adjudication never existed at all. That is the only way to give effect to the plain meaning of the verb "to expunge," which under the majority's defini-

---

**2.** These records are broadly defined in Minn. Stat. §§ 260B.171, 260C.171, and 299C.095, subd. 1 (2012).

tion requires records to be obliterated, removed "utterly from recognition, cognizance, or memory," *Black's* at 1557, or, as we said in *Barlow*, made as if they "never occurred," 365 N.W.2d at 233. *Accord C.A.*, 304 N.W.2d at 357 ("The verb, to expunge, literally means to destroy or obliterate." (internal quotation marks omitted)). I conclude that no other reading of the plain meaning of the operative verb, "to expunge," makes sense within the context of the statutory scheme established by the Legislature for the expungement of juvenile-delinquency records.[3]

The majority's holding—that the Legislature created this detailed scheme managing juvenile-history data and juvenile expungement and yet intended expungement to be an illusory, weak concept and that, postexpungement, the Legislature intended significant juvenile-history records to remain in place—creates an odd situation. Applying the majority's holding to this case, the *order* adjudicating delinquency— the only avenue under the law that allows the BCA to maintain J.J.P.'s juvenile-history records—would be sealed, but all of the records that the BCA would *otherwise be required to destroy absent that order* remain in place. Under the majority's holding, when the Department of Human Services (DHS) or any other authorized entity conducts a background check and looks into J.J.P.'s file at the BCA they would not find the order adjudicating J.J.P. delinquent. But they *would* find a host of other documents that the BCA would have already been required to destroy if J.J.P. had not been found delinquent.[4]

At this juncture, an allegory from everyday life may prove helpful. Many parents are familiar with the difficulty of removing a stain of milk or infant formula from a baby's garment. Normal washing may make a garment stained with milk or formula appear clean after washing. The parent then stores the garment for future use, believing the garment to be clean. But protein or iron in milk and formula is

---

3. Some might look at this exegesis of "expunge" and conclude that the plain meaning of the word requires the physical destruction of the records present. But there is no tension between my conclusion about the meaning of "expunge" described above and the fact that a district court seals the records in issue, rather than orders the physical destruction of those records. A record can be legally expunged, obliterated under the law, and removed utterly from the memory of the law and still physically exist. It is the *extent* of what "to expunge" means where I part ways with the majority and the district court, not on the issue of whether "to expunge" mandates physical destruction of records. Finally, while the meaning of "expunge" itself does not require physical destruction of records, if an order adjudicating delinquency is to be expunged *under the law*, then the Legislature's record retention statute dictates that the BCA is statutorily required to destroy its juvenile-delinquency records. Any other reading significantly weakens the expungement process envisioned by the Legislature.

4. It is worth noting that Minn.Stat. § 299C.095, subd. 2(e) allows the BCA to maintain a child's juvenile-history records until that child reaches the age of 28 if a child is found to have committed a felony or gross misdemeanor-level offense *or* if a petition is filed against the child and then stayed without adjudication. At first glance these alternative scenarios might make it appear that DHS would not be able to infer that J.J.P. had been found delinquent merely because his juvenile-history records were still intact at age 25. But, if a stay had been issued that stay would also become part of a child's juvenile-history records, and, under the majority's holding, a district court cannot expunge a *stay* of adjudication—only a final order. Therefore, if DHS found a 25 year old's juvenile-history records intact at the BCA, but no stay of adjudication accompanying the file, they, or any other entity conducting a background check, could still infer that an order finding that the juvenile had committed a gross misdemeanor or felony had been filed but later expunged.

often not removed through normal washing and, overtime, may break down while the garment is being stored and the residue will cause the unsightly stain to reappear. Many parents have gone to retrieve garments they washed and stored, thinking the garments were clean, only to find that the garments are still marred by a stain that has not been fully removed. Would those disappointed parents, risking embarrassment for parent and child alike, characterize the original stain as "expunged"? Would they agree that the stain had been obliterated, removed utterly from recognition, cognizance, or memory, or made as if it "never occurred"? Likely not. But today the majority utilizes a solution that is similar to washing a milk or formula stain with normal detergent, only to have the detritus of the original stain clearly visible. In essence, the majority asserts that the "stain" on J.J.P.'s record has been expunged, when in fact the detritus of that stain remains clearly visible.

Notwithstanding the preceding discussion on the interplay between the plain meaning of "expunge" as used in the juvenile-record-expungement statute and the legislatively mandated scheme for destroying juvenile-history records, it is not only worthwhile, but necessary to address the implications of the Legislature's scheme even under the majority's holding. The Legislature's mandated scheme has already created detailed and strict timelines for the destruction of juvenile-history records. Under this scheme, when an order adjudicating delinquency alone is expunged from a child's file at the BCA, the BCA's statutory authority for maintaining that file until the child reaches the age of 28 evaporates. Therefore, I believe the foregoing provisions of the statute mean that, once an order adjudicating a juvenile delinquent is expunged, that child's entire juvenile-history records must be handled by the BCA as if the order had never been filed. Because no stay has been entered in such a file, I conclude that the BCA has no statutory basis for maintaining the juvenile-history records of a 25 year old like J.J.P. Accordingly, once the order adjudicating delinquency is expunged, the BCA must behave as if no such order was ever received and move to comply with Minn. Stat. § 299C.095 by destroying the records that it no longer has the statutory authority to maintain.

The majority offers one additional observation in support of its reading of "expunge" that I must address. The majority notes that the expungement provision in the general criminal statute, Minn.Stat. ch. 609A, contains broader language about what may be expunged than the expungement provision within the juvenile-delinquency statute, Minn.Stat. § 260B.198, subd. 6. There is a simple and straightforward explanation for the difference between these two statutes: the Legislature has already mandated the destruction of juvenile records within very specific, and, in some cases, very tight timelines under Minn.Stat. § 299C.095, subd. 2. No such exacting timeline exists for the destruction of adult criminal records. Because the Legislature thoroughly addressed the destruction of juvenile-history records, it was unnecessary for it to do so again within the juvenile-record-expungement provision.

In conclusion, the majority's narrow definition of "adjudication," in conjunction with the plain meaning of "expunge," is unsustainable. The Legislature's use of "adjudication" plainly covers the entire *process* of adjudicating a juvenile delinquent, not just the final order. And the Legislature's use of "expunge" plainly grants broad authority to the courts to make it as if the adjudication of delinquency never existed—to remove it utterly

from memory. *Accord Barlow,* 365 N.W.2d at 233.

For all of the foregoing reasons, I respectfully concur and write separately.

PAGE, Justice (concurring).

I join in the concurrence of Justice Paul H. Anderson.

WRIGHT, Justice (concurring).

I join the concurrence of Justice Paul H. Anderson as it pertains to the scope of the expungement authority expressly granted by the Legislature in Minn.Stat. § 260B.198, subd. 6 (2012).