*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0906**

In the Matter of the Welfare of: C.M.M.,
Child.

**Filed March 7, 2016
Reversed
Ross, Judge**

Hennepin County District Court
File Nos.  27-JV-05-4637;
27-JV-06-83

Lori Swanson, Attorney General, Stephanie Hilstrom, Assistant Attorney General, St. Paul, Minnesota (for appellant Department of Human Services)

Mary F. Moriarty, Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, Minnesota (for respondent child)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

The Minnesota Department of Human Services (DHS) challenges the district court's order requiring it to seal its files related to respondent C.M.M.'s juvenile delinquency records after C.M.M. improperly served her expungement petition to the wrong address and with the wrong hearing date. Because we hold that C.M.M. did not properly serve DHS her expungement petition so as to afford DHS a fair response opportunity, the district court cannot require it to seal its records. We therefore reverse.

# FACTS

C.M.M. petitioned the district court to expunge her juvenile delinquency records. C.M.M. served her expungement petition on all interested agencies except for DHS. A hearing was originally scheduled for July 31, 2014, but C.M.M. moved for a continuance until after January 1, 2015, when a new expungement law would become effective. During a hearing on January 23, 2015, the state notified the district court that C.M.M. had not served DHS. The district court stated that it would hold the hearing record open so that C.M.M. could serve DHS, presumably giving DHS an opportunity to respond.

On January 23, C.M.M. filed an affidavit of service on DHS by mail that same date. But C.M.M. addressed her papers inaccurately to the site of the department of health, not DHS. The department of health forwarded the papers by intragovernmental mail and DHS finally received the petition on February 6, 2015. The petition also did not reveal the January 23, 2015 hearing date, instead specifying a hearing date of July 31, 2014. The service directed DHS to provide any objections within 60 days.

On March 31, 2015, fewer than 60 days after C.M.M.'s service papers finally reached DHS, having not heard from DHS the district court granted C.M.M.'s petition to expunge her delinquency records and ordered several state agencies, including DHS, to seal all records related to C.M.M.'s delinquency cases. DHS moved the district court to reconsider, arguing that DHS was never notified of the January 23 hearing date and that the district court granted the petition without affording DHS an adequate opportunity to respond. The district court denied DHS's motion, holding that DHS's receipt of the petition

on February 6 constituted personal service and that "50 days was an abundant amount of time to submit objections." DHS appeals.

## D E C I S I O N

DHS argues that it cannot be ordered to seal C.M.M.'s juvenile records because it did not receive proper service of the expungement petition as required by Minnesota Statutes section 245C.08, subdivision 1(b) (Supp. 2015). A district court may expunge juvenile delinquency records when statutory conditions are met. Minn. Stat. § 260B.198, subd. 6(a) (2014). But even after the court orders expungement, DHS may continue to consider the records if DHS was not given notice of the expungement petition. Minn. Stat. § 245C.08, subd. 1(b); *In re H.A.L.*, 828 N.W.2d 476, 479 (Minn. App. 2013). We review de novo whether service was effective. *Roehrdanz v. Brill*, 682 N.W.2d 626, 629 (Minn. 2004).

DHS argues that its eventual receipt of the petition does not constitute service because the petition was mailed to the wrong address. The argument overlooks the fact that personal service is as effective as service by mail. And the supreme court has held that receiving documents to be served constitutes personal service on the date they were received by the served party even when they were mailed to the wrong address. *See, e.g.*, *State v. Pierce*, 257 Minn. 114, 115–16, 100 N.W.2d 137, 138 (1959) ("[W]e have long held that, where service is made by mail and actually reaches the party to be served within the required time, it is equivalent to personal service."); *Daw v. Daw*, 212 Minn. 507, 511–12, 4 N.W.2d 313, 315 (1942) ("When the paper actually comes to the hands of the person to be served within the time required for personal service, it is immaterial where it is

mailed; for then it is equivalent to personal service." (quotation omitted)). DHS's receipt of the petition constituted adequate personal service.

The question remains, however, whether the petition that DHS received provided it with adequate notice of C.M.M.'s expungement petition so as to subject DHS to the expungement order. Under the circumstances of this case, we think not. DHS had the right to object to the expungement petition within 60 days. To expunge adult criminal records, the district court can hold an expungement hearing "no sooner than 60 days after service of the petition." Minn. Stat. § 609A.03, subd. 4 (2014). DHS rightly concedes that the statutory 60-day requirement does not apply to the expungement of juvenile records under Minnesota Statutes section 260B.198, subdivision 6 (2014). *See In re Welfare of J.J.P.*, 831 N.W.2d 260, 270 (Minn. 2013) ("By its very terms, chapter 609A cannot control a petition brought under section 260B.198, subdivision 6 to expunge a delinquency-adjudication order."). But C.M.M.'s petition informed DHS that it had 60 days to respond. And the district court issued its expungement order only 53 days after DHS was personally served the petition. The district court may be correct that, generally, "50 days [is] an abundant amount of time to submit objections," but not when the party was given no notice of the 50-day deadline and instead informed that it faced only a 60-day deadline.

C.M.M. counters that if DHS had performed "even a minor investigation," it would have learned that the July 31 hearing was continued to January 23 and would have had time to object to the petition before the district court issued its order. But DHS had no reason to suspect that it needed to investigate to learn its response deadline; the petition informed DHS expressly of its 60-day deadline. It was C.M.M.'s duty as petitioner to serve DHS

4

with a petition that adequately informed DHS about the expungement request, allowing DHS "a full opportunity to voice any concerns" before the district court orders the records expunged. *See H.A.L.*, 828 N.W.2d at 479. The multiple defects and the timing of the relevant events denied DHS its opportunity to object. Because the petition did not give DHS adequate notice, we reverse that portion of the district court's order requiring DHS to seal its records of C.M.M.'s juvenile delinquency.

**Reversed.**