STATE OF MINNESOTA

IN SUPREME COURT

A22-0654

Court of Appeals                                                  Chutich, J.

In the Matter of the Welfare                          Filed: February 28, 2024
of:  D.J.F.-D., Child.                                  Office of Appellate Courts

_____

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

Rule 20.01, subdivision 7(A) of the Minnesota Rules of Juvenile Delinquency Procedure permits the State, within 1 year of a juvenile court's finding of incompetency, to file a notice of intention to prosecute a child when the child has been restored to competency.  A notice has the effect of extending the suspension of proceedings for 1 year, provided that the child does not age out of juvenile jurisdiction during the suspension.  So long as the juvenile court continues to make findings of incompetency, the State may file attendant, timely notices of intention to prosecute, thereby extending the suspension of delinquency proceedings until the child ages out of juvenile jurisdiction.

Affirmed.

1

CHUTICH, Justice.

Rule 20 of the Minnesota Rules of Juvenile Delinquency Procedure governs the conduct of delinquency proceedings when a child is found incompetent to proceed. At issue here is Rule 20.01, subdivision 7(A). This subdivision provides that juvenile proceedings shall be dismissed upon the earlier of (1) the child aging out of juvenile jurisdiction, or (2) the expiration of 1 year from the date of the finding that the child is incompetent to proceed, unless the prosecuting attorney, before that period expires, files a notice of intention to prosecute the child when the child has been restored to competency. The rule provides that if such a notice is filed, it extends the suspension of proceedings for 1 year from the date it was filed "subject to Rule 20.01, subdivision 7(A)." We are asked here to determine whether Rule 20.01, subdivision 7(A), allows the State to file more than one notice of intention to prosecute a child found incompetent to proceed.

In this case, the State filed a juvenile delinquency petition against appellant D.J.F.-D., alleging a gross misdemeanor offense. In June 2020, the juvenile court found him incompetent to proceed and suspended the proceedings against him for 1 year. Before the suspension expired, the State filed its first notice of intention to prosecute D.J.F.-D., thereby extending the suspension an additional year under Rule 20.01, subdivision 7(A)(2). During that 1-year period, the juvenile court held two review hearings and following each issued a finding of incompetency to proceed.

Shortly before the extended suspension would expire, D.J.F.-D. moved to dismiss the proceedings, 1 year after the State filed its notice of intention to prosecute. He

contended that subdivision 7(A) allows the State to file only one notice of intention to prosecute, which it had already done. The juvenile court denied his motion, an interlocutory appeal was taken, and the court of appeals affirmed in a divided opinion.[1] *In re Welfare of D.J.F.-D.*, 986 N.W.2d 17 (Minn. App. 2023). We granted D.J.F.-D.'s petition for review. Because we conclude that Rule 20.01, subdivision 7(A), permits the State to file more than one notice of intention to prosecute, we affirm.

**FACTS**

On January 29, 2020, the State filed a delinquency petition against D.J.F.-D., alleging gross misdemeanor fifth-degree criminal sexual conduct.[2] The petition states that in April 2019, D.J.F.-D., then age 13, accompanied his mother on her route as a school bus driver over several days. During these bus rides, video surveillance showed D.J.F.-D. aggressively kissing several 4- and 5-year-old children on the mouth, crawling on top of

---

[1] Because no procedural rule permitted D.J.F.-D. to appeal the juvenile court order as of right, the court of appeals granted his petition for discretionary review under Minnesota Rule of Juvenile Delinquency Procedure 21.03, subdivision 1, and Minnesota Rule of Criminal Procedure 28.02, subdivision 3. *In re Welfare of D.J.F.-D.*, 986 N.W.2d 17, 20–21 (Minn. App. 2023).

[2] The State also alleged that D.J.F.-D. committed two counts of petty misdemeanor disorderly conduct. Rule 20.01, subdivision 5(B), of the Minnesota Rules of Juvenile Delinquency Procedure requires, however, that a juvenile court dismiss petty misdemeanor offenses upon finding a child incompetent to proceed. The juvenile court accordingly dismissed the disorderly conduct charges under that subdivision.

them, and tickling them. A 5-year-old child told investigators that D.J.F.-D. exposed himself to the child and pulled down a different child's pants.

Rule 20.01 of the Minnesota Rules of Juvenile Delinquency Procedure requires a prosecutor, a child's counsel, or the court to bring a motion to determine the child's competency if reason exists to doubt that competency during the pending proceedings. Under this rule, the juvenile court ordered that D.J.F.-D. undergo an examination with a licensed psychologist, who would then report to the court on the child's mental condition and, if the child were mentally ill, whether he was competent to proceed. The psychologist concluded that D.J.F.-D. was incompetent to proceed. The court held a competency hearing on June 3, 2020; neither the State, nor D.J.F.-D.'s counsel, objected to the psychologist's report. Based on the record before it, the court found that D.J.F.-D. was incompetent to proceed and suspended the delinquency proceedings.[3]

When a juvenile court finds a child incompetent and suspends gross misdemeanor delinquency proceedings, Rule 20.01, subdivision 6, requires "the person charged with the child's supervision . . . [to] report to the trial court on the child's . . . competency to

---

[3] Rule 20.01, subdivision 5(B), guides a juvenile court's discretion after finding a child incompetent to proceed. Minn. R. Juv. Delinq. P. 20.01, subd. 5(B). The court's options depend on the severity of the alleged offense. "If the offense is a misdemeanor, juvenile petty offense, or juvenile traffic offense," the juvenile court must dismiss the charge. *Id.* If the offense is a gross misdemeanor, like D.J.F.-D.'s alleged criminal sexual conduct offense, "the court has the discretion to dismiss or suspend the proceedings . . . except as provided by Rule 20.01, subdivision 7." *Id.* If the offense is a felony, the proceedings must be "suspended except as provided by Rule 20.01, subdivision 7." *Id.* As emphasized by the court of appeals, subdivision 5(B) grants the juvenile court discretion to suspend gross misdemeanor delinquency proceedings until such time as subdivision 7(A) requires dismissal. *In re Welfare of D.J.F.-D.*, 986 N.W.2d at 23.

proceed at least every six (6) months unless otherwise ordered." Minn. R. Juv. Delinq. P. 20.01, subd. 6. Consequently, on November 3, 2020, and May 17, 2021, the juvenile court held hearings to review D.J.F.-D.'s mental competency. In each instance, a licensed psychologist opined that he was incompetent to proceed. Neither the State nor D.J.F.-D.'s counsel objected to those opinions. Based on the record before it, the court found D.J.F.-D. "incompetent by the greater weight of the evidence,"[4] continued the suspension of proceedings, and ordered the parties to return for a review hearing in approximately 6 months.

On June 1, 2021, approximately 1 year after D.J.F.-D. was first found incompetent to proceed, the State filed a notice of intention to prosecute D.J.F.-D. when restored to competency, pursuant to Rule 20.01, subdivision 7(A). Subdivision 7(A) provides in full:

**Subd. 7. Dismissal of Proceedings.**

(A) Delinquency and extended jurisdiction juvenile proceedings shall be dismissed upon the earlier of the following:
(1) the child's nineteenth (19th) birthday in the case of a delinquency, or twenty-first (21st) birthday if a designation or motion for extended jurisdiction juvenile proceedings is pending;
(2) for all cases except murder, the expiration of one (1) year from the date of the finding of the child's incompetency to proceed unless the prosecuting attorney, before the expiration of the one (1) year period, files a written notice of intention to prosecute the child when the child has been restored to competency. Such a notice shall extend the suspension of proceeding for one (1) year from the date of filing subject to Rule 20.01, subdivision 7(A).

---

[4] The suspension granted under Rule 20.01, subdivision 5(B), continues until a juvenile is found competent to proceed or the case is otherwise dismissed, either in the court's discretion for gross misdemeanor proceedings, or when Rule 20.01, subdivision 7, requires dismissal. We do not interpret subdivision 5(B) to mean that each updated competency report either ends the prior suspension, or begins a new suspension, of proceedings.

On November 1, 2021, the juvenile court held a fourth review hearing. Again, the parties received an evaluation report prepared by a licensed psychologist, who concluded that D.J.F.-D. was incompetent to proceed. Neither the State nor D.J.F.-D.'s counsel objected to the psychologist's evaluation. Based on the record before it, the juvenile court found that D.J.F.-D. was incompetent to proceed and continued the existing suspension under Rule 20.01, subdivision 5(B).

On April 14, 2022, the juvenile court held a fifth review hearing. The licensed psychologist again concluded that D.J.F.-D. was incompetent to proceed. Based on the psychologist's report, the court found D.J.F.-D. incompetent to proceed and continued the existing suspension under Rule 20.01, subdivision 5(B). Notably, the psychologist opined that D.J.F.-D. was unlikely to regain competency within 6 months of the report's issuance. The State then requested that the court set the next review hearing within a 12-month period, and the court scheduled it for March 6, 2023.

In April 2022, D.J.F.-D. brought a motion to dismiss. He asserted that the State could obtain only *one* extension of the suspension of proceedings by filing a notice of intention to prosecute within 1 year of the initial finding of his incompetency. That is, he claimed that Rule 20.01 requires that—barring a finding that he is competent—his case must be dismissed as of June 1, 2022, 1 year after the State filed its notice.

The juvenile court denied D.J.F.-D.'s motion to dismiss the delinquency proceedings. The court rejected his argument that Rule 20.01, subdivision 7(A), permits

6

the State to suspend proceedings against an incompetent child only once.[5] The court reasoned that nothing in Rule 20.01 prevents the State from filing more than one notice. Characterizing the rule's language as ambiguous, the juvenile court concluded that D.J.F.-D.'s interpretation of Rule 20.01 would make subdivision 7(A)(2)'s language, "subject to Rule 20.01, subdivision 7(A)," superfluous.[6]

D.J.F.-D. filed a petition seeking a discretionary appeal under Rule 21.03, subdivision 1, of the Minnesota Rules of Juvenile Delinquency Procedure and Rule 28.02, subdivision 3, of the Minnesota Rules of Criminal Procedure. The court of appeals granted the petition.

A divided panel of the court of appeals held that the plain language of Rule 20.01, subdivision 7(A), did not limit the number of notices of intention the State could file. *In re Welfare of D.J.F.-D.*, 986 N.W.2d at 19. The court stated that subdivision 7(A)(2)'s provision that a notice extends the suspension of proceedings for 1 year from the date of filing "subject to Rule 20.01, subdivision 7(A)" was critical to its analysis. *Id.* at 23 (quoting Minn. R. Juv. Delinq. P. 20.01, subd. 7(A)). The "subject to" phrase, per the court, creates a "loop," directing the juvenile court to the beginning of subdivision 7(A) to repeat the steps in subdivisions 7(A)(1) and 7(A)(2) to determine whether dismissal is required. *Id.* Making the rule " 'subject to' both subdivisions 7(A)(1) and 7(A)(2)" means

---

[5] The juvenile court also rejected D.F.J.-D.'s argument that it should dismiss the delinquency proceedings in the interests of justice. D.F.J.-D. forfeited appellate review of the interests-of-justice issue when he failed to raise it in his petition for review.

[6] On May 24, 2022, the State filed a second notice of intention to prosecute.

that the State may file additional notices on a "serial basis" within "a year of any finding of the child's incompetency," extending the suspension of proceedings "until the child ages out of juvenile jurisdiction and the proceedings must be dismissed." *Id.* at 24. The court noted that D.J.F.-D.'s reading would make the "subject to" phrase superfluous and, relatedly, the incorporated reference to subdivision 7(A)(2) duplicative. *Id.* at 24–25. Because Rule 20.01 "already provides for dismissal when a child ages out of juvenile jurisdiction based on the language stating that the 'proceedings shall be dismissed upon the earlier of the following,' " the court reasoned that reading the rule to permit multiple notices was the only interpretation that gave effect to all its language. *Id.* at 25.

The dissenting judge also considered the phrase "subject to Rule 20.01, subdivision 7(A)" to be critical, but for different reasons. *Id.* at 29 (dissenting, Smith, Tracy M., J.). Rather than creating a "loop" to permit filings on a "serial basis," the dissent concluded that the rule's plain language requires dismissal 1 year after the state's filing of notice "if a child determined to be incompetent has not yet aged out of juvenile jurisdiction." *Id.* The dissent's interpretation considered the "subject to" phrase a "limitation on the otherwise one-year length of the extension . . . . by returning the reader to the beginning of subdivision 7(A)." *Id.* at 29–30. "Thus, if the state files a notice of intention to prosecute and the child ages out before the one-year extension under subparagraph (2) expires, the proceeding must be dismissed when the child ages out." *Id.* at 30. The "subject to" phrase "is necessary to return the reader to the 'dismissal upon the earlier of' language that is fundamental to the rule's operation." *Id.*

D.J.F.-D. filed a petition for review, which this court granted.

8

**ANALYSIS**

The issue presented is whether Rule 20.01, subdivision 7(A), of the Minnesota Rules of Juvenile Delinquency Procedure permits the State, after a child has been found incompetent to proceed, to file more than one notice of intention to prosecute a child. For the following reasons, we conclude that, so long as the juvenile court continues to issue findings that the child is, or remains, incompetent to proceed, subdivision 7(A) permits the State to file multiple notices of intention to prosecute, extending the suspension of gross misdemeanor proceedings until a child is restored to competency, ages out of juvenile jurisdiction, or the State fails to timely file a notice.

**A.**

We first set out our framework for interpreting our rules of court, as well as the procedures a juvenile court undertakes after finding a child incompetent to proceed under Rule 20.01.

**1.**

We interpret procedural rules de novo. *In re Welfare of C.J.H.*, 878 N.W.2d 15, 19 (Minn. 2016). Our interpretation must comply "with the rules of grammar and give words and phrases their common and approved usage." *State v. Hohenwald*, 815 N.W.2d 823, 829 (Minn. 2012). If the rule's meaning "is plain and unambiguous, we must interpret the rule in accordance with its plain language." *Id.* A rule is ambiguous if it is "subject to more than one reasonable interpretation." *State v. Dahlin*, 753 N.W.2d 300, 306 (Minn. 2008). We read rules "as a whole and each section is interpreted in light of the surrounding sections to avoid conflicting interpretations." *Id.* (citation omitted) (internal quotation

marks omitted). Where possible, "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Id.* (citation omitted) (internal quotation marks omitted).

2.

To better explain the parties' interpretive dispute, we first detail the procedures a juvenile court undertakes after finding a child incompetent to proceed under Rule 20.01. In juvenile delinquency proceedings, the effect of an incompetency finding depends on the severity of the alleged offense. Rule 20.01, subdivision 5, guides a juvenile court's discretion, or lack thereof, following this finding.

Specifically, subdivision 5(B) dictates whether the juvenile court may, or must, suspend or dismiss proceedings. For misdemeanors, juvenile petty offenses, and juvenile traffic offenses, the juvenile court *must* dismiss the proceedings. Minn. R. Juv. Delinq. P. 20.01, subd. 5(B). In contrast, for gross misdemeanors, "the court has the discretion to dismiss or suspend the proceedings . . . except as provided by Rule 20.01, subdivision 7." *Id.* Finally, felony proceedings must be "suspended except as provided by Rule 20.01, subdivision 7." *Id.* Here, D.J.F.-D. is charged with a gross misdemeanor, so the juvenile court has discretion to dismiss or to suspend proceedings "except as provided by" subdivision 7, which dictates when a juvenile court *must* dismiss proceedings.

Subdivision 7(A) provides in relevant part that delinquency proceedings "shall be dismissed upon the earlier of the following:"

> (1) the child's nineteenth (19th) birthday in the case of a delinquency . . . ;

10

(2) for all cases except murder, the expiration of one (1) year from the date of the finding of the child's incompetency to proceed unless the prosecuting attorney, before the expiration of the one (1) year period, files a written notice of intention to prosecute the child when the child has been restored to competency. Such a notice shall extend the suspension of proceeding for one (1) year from the date of filing subject to Rule 20.01, subdivision 7(A).

Minn. R. Juv. Delinq. P. 20.01, subd. 7(A). Put simply, by its text subdivision 7 requires the juvenile court to dismiss proceedings on the earliest of (1) the child aging out of juvenile jurisdiction, (2) 1 year after "the finding of the child's incompetency" if the State does not file a notice, or (3) if the State files a notice, 1 year after that filing "subject to Rule 20.01, subdivision 7(A)." *Id.*

The issue before us turns on the meaning of two phrases in subdivision 7(A)(2): (1) "the finding of the child's incompetency," and (2) "subject to Rule 20.01, subdivision 7(A)." We interpret these phrases in turn.

B.

We begin with the phrase "the finding of the child's incompetency," as subdivision 7(A)(2) contemplates that this finding precedes the State's notice of intention to prosecute. Minn. R. Juv. Delinq. P. 20.01, subd. 7(A)(2) ("[P]roceedings shall be dismissed upon the expiration of one (1) year from the date of *the finding of the child's incompetency* to proceed unless the prosecuting attorney, before the expiration of the one (1) year period, files a written notice of intention to prosecute the child when the child has been restored to competency." (emphasis added)). We first look to the rule's plain language. Only if the language is subject to more than one reasonable interpretation do we employ additional tools for interpreting ambiguity.

11

1.

D.J.F.-D. claims that the use of the definite article "the" at the beginning of the phrase implies that a notice may follow only the *initial* finding of the child's incompetency. The State counters that the use of the definite article merely refers to "the" finding as a specific event, and "the" 1-year period as a limitation on the extension's duration, rather than a limitation on the number of notice filings.

We have recognized that "[t]he definite article 'the' is a word of limitation that indicates a reference to a specific object." *Hohenwald*, 815 N.W.2d at 830. But the phrase at issue does not specify whether the specific object referred to—"the finding of the child's incompetency"—is only the initial, required finding of incompetency that gave rise to subdivision 7's relevance in the first instance, or is rather a reference to the finding triggering the 1-year period, whether the initial finding, or a later one. As a result, to determine the meaning of the phrase "the finding of the child's incompetency" in subdivision 7, we evaluate its use in other Rule 20.01 subdivisions. *Dahlin*, 753 N.W.2d at 306 (discussing the interpretive, plain language practice of reading a rule "as a whole" and interpreting each section "in light of the surrounding sections to avoid conflicting interpretations" (citation omitted) (internal quotation marks omitted)).

First, within subdivision 7, the language at issue in subdivision 7(A)(2) refers to "the finding of the child's incompetency," while subdivision 7(B)—which concerns cases pending certification as an adult and is therefore not at issue here—specifically states that "[m]urder charges shall not be dismissed based upon a finding of incompetency." Minn. R. Juv. Delinq. P. 20.01, subd. 7(A)–(B) (emphasis added). The use of the indefinite article

12

"a" in subdivision 7(B) "signals a generic reference." *See State v. Culver*, 941 N.W.2d 134, 140 (Minn. 2020) (citing Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 10.38 (2d ed. 2006)). Accordingly, the contrasting use of "a finding" in subdivision 7(B), reinforces that the reference to "the finding" in subdivision 7(A) cannot similarly be a generic reference. But it still does not answer whether "the finding" in subdivision 7(A) refers to only the initial finding of incompetency, or instead refers to the specific finding triggering the 1-year period of suspension, whether that is the initial finding or a later one.

Outside of subdivision 7, subdivision 5(B) is titled "Finding of Incompetency." But to the extent that this title could have interpretive value, it is diminished because it is not preceded by any article, either definite or indefinite. As to subdivision 5(B)'s operation, that subdivision guides the juvenile court's discretion on whether to suspend or to dismiss proceedings against a child found incompetent. Although here the juvenile court found D.J.F.-D. incompetent on five separate occasions and, with each finding, suspended proceedings, subdivision 5(B) does not state whether the court may suspend proceedings following only an initial "Finding of Incompetency," or if it may continuously do so after any subsequent finding. Minn. R. Juv. Delinq. P. 20.01, subd. 5(B).

Other provisions of Rule 20.01, rather than resolving the meaning of subdivision 7(A), instead highlight the lack of clarity as to whether a juvenile court may issue new "findings" of incompetency, and continuously suspend proceedings, for a child already found incompetent. For example, subdivision 6 provides that the juvenile court maintains supervision over a child in suspended, gross misdemeanor proceedings. Minn. R. Juv. Delinq. P. 20.01, subd. 6. The subdivision requires "the person charged with the child's

13

supervision . . . [to] report to the trial court on the child's mental condition and competency to proceed at least every six (6) months unless otherwise ordered." *Id.* But the subdivision neither requires, nor explicitly permits, the juvenile court to make a new "finding of the child's incompetency" for each report received, though the juvenile court here did so at regular, 6-month intervals.[7]

The subdivisions governing competency proceedings, and the hearing and determination of competency, are similarly unclear. *See* Minn. R. Juv. Delinq. P. 20.01, subds. 3, 4. Rule 20.01, subdivision 3, provides that either the "prosecuting attorney, the child's counsel or the court shall bring a motion to determine the competency of the child if there is reason to doubt the [child's] competency" during the pending proceedings. Minn. R. Juv. Delinq. P. 20.01, subd. 3. Pursuant to this motion, the court may suspend proceedings and order an examination to determine the child's mental condition. *Id.*, subd. 3(C). Subdivision 3(D) requires the medical personnel who conducts the examination to "file a written report with the court." *Id.*, subd. 3(D). The report must contain an opinion on the child's mental condition, and certain information for children deemed "mentally ill or cognitively impaired." *Id.*, subd. 3(D)(2). Notably, subdivision 3 does not clarify whether the "motion to determine the competency of the child" refers only

---

[7]     Neither D.J.F.-D. nor the State explicitly challenge the district court's authority to issue new findings of the child's incompetency after the initial finding. Indeed, D.J.F.-D. frames the legal issue in this case as whether "the district court err[ed] by denying D.J.F.-D.'s motion to dismiss the delinquency petition following the *fifth finding of incompetency* in two years[.]" (emphasis added). Instead, he argues that the State's notice of intention to prosecute may follow only the *initial* finding, while the State counters that a notice may follow *any* finding of incompetency, whether the initial finding, or a finding of continuing incompetency.

14

to determining whether a child is incompetent in the first instance, or if it includes determinations that a child *remains* incompetent thereafter based on an updated competency report.

The juvenile court, however, must hold a review hearing on the subdivision 3 report pursuant to Rule 20.01, subdivision 4(A), within 10 days of receiving the report and notice to the parties. Minn. R. Juv. Delinq. P. 20.01, subd. 4(A). Within 15 days of that hearing, the court must enter a "written order." *Id.*, subd. 4(E). Subdivision 4(E) specifies the contents of that order: "If the court determines that the child is competent by the greater weight of evidence, the court shall enter a written order finding competency. Otherwise, the court shall enter a *written order finding incompetency*." *Id.* (emphasis added). But like subdivision 3, subdivision 4 does not state whether the "written order finding incompetency" is limited to the initial finding, or if the subdivision requires the juvenile court to hold a review hearing and issue "a written order finding incompetency" on any report opining that the child *remains* incompetent.

Rule 20.01, therefore, does not clarify whether "the finding of the child's incompetency" in subdivision 7(A) refers to only the initial finding of incompetency, or is a reference to the finding triggering the 1-year period, regardless of whether that is the initial finding or a later finding that the child remains incompetent. Because both interpretations are reasonable, the text is ambiguous.

2.

Having found that the language in subdivision 7(A) is ambiguous, we turn to the rule's purpose and history. *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603

15

(Minn. 2014) (recognizing that a rule's unambiguous plain language is controlling, but that "its purpose and history, and its procedural context," are also relevant to its interpretation); *House v. Hanson*, 72 N.W.2d 874, 878 (Minn. 1955) ("The words of a court rule, like those of a statute, must be taken and construed in the sense in which they were understood and intended at the time the rule was promulgated.").

Initially, the parties dispute how to interpret subdivision 7(A) given the corresponding rule for adult criminal defendants, upon which the juvenile rule is based. *See* Minn. R. Juv. Delinq. P. 20 cmt. ("Minn. R. Juv. Del. P. 20 is based upon Minn. R. Crim. P. 20."). Because different policy interests inform the rules of juvenile delinquency procedure on the one hand, and the rules of criminal procedure on the other, we decline to read Rule 20.01 in light of the criminal rules. *See* Minn. R. Juv. Delinq. P. 1.02 (stating that the juvenile rules "shall be construed to achieve [the] purposes" of the rules through "means that . . . recognize the unique characteristics and needs of children"). Any distinctions between these rules are unhelpful in our interpretation of the juvenile Rule 20.01, given the inherent differences between the restoration of mental competency in adults, as compared to juveniles. *See generally* Barry C. Feld, *Competence and Culpability: Delinquents in Juvenile Courts, Youths in Criminal Courts*, 102 Minn. L. Rev. 473, 518–19 (2017) (discussing the sources of incompetency in adult defendants as compared to juvenile delinquents, the challenge of accelerating legal capacities in children

whose deficiencies stem from "developmental immaturity," and the difficulty of restoring competency in younger juveniles).[8]

Instead, our interpretation of subdivision 7(A) rests on the strong policy interest in maintaining supervision over a child alleged to be, or adjudicated, delinquent, both to serve public safety and to ensure that the child receives rehabilitative services. *See* Minn. R. Juv. Delinq. P. 1.02 (setting out the purpose of juvenile delinquency laws "to promote the public safety and reduce juvenile delinquency" by "means that are fair and just, that recognize the unique characteristics and needs of children, and that give children access to opportunities for personal and social growth"); *see also* Minn. R. Juv. Delinq. P. 20.01, subd. 3(D)(2) (requiring a juvenile's competency report to include information as to "whether the child . . . needs emergency intervention," and "whether the child requires any treatment to attain competency and if so, the appropriate treatment alternatives"). Interpreting subdivision 7(A) to permit multiple findings of incompetency serves these interests by allowing the juvenile court to maintain supervision over a child alleged to be delinquent, particularly in cases, such as D.J.F.-D.'s, when the allegations are serious, and the child poses a potential public safety risk.[9]

---

[8]    We note, further, that the Legislature recently passed a law regarding mental health policy, which imposes new procedural requirements to determine the competency of criminal defendants. *See* Minn. Stat. § 611.40, *as amended by*, Act of June 2, 2022, ch. 99, art. 1, §§ 26–37. Notably, that law explicitly "does not apply to juvenile courts." *Id.*, ch. 99, § 26, 2022 Minn. Laws at 1020.

[9]    This interpretation also serves judicial efficiency and economy to the extent that subdivision 7(A) does not require the juvenile court to dismiss proceedings with prejudice. If, for example, the rule required the dismissal of proceedings 1 year after the State's one

Because policy interests support permitting a juvenile court to make multiple findings of a child's incompetency, the phrase "the finding of the child's incompetency" in Rule 20.01, subdivision 7(A), is not limited to the initial finding of incompetency. Instead, the juvenile court may make multiple incompetency findings under its obligation to supervise a child found incompetent to proceed. The reference in Rule 20.01, subdivision 7(A), to "the finding of the child's incompetency to proceed," is therefore to the finding triggering the 1-year period, regardless of whether that is the initial finding of incompetency or a later finding.

## C.

Having found that the phrase "the finding of the child's incompetency" is not limited to the initial finding, we now address whether the State may file more than one notice of intention to prosecute a child found incompetent following a "finding of the child's incompetency." For the reasons given below, we conclude that, under subdivision 7(A)(2), the State may file a notice after any finding that the child is, or remains, incompetent.

The parties, and the divided decision at the court of appeals, suggest that this issue turns on the meaning of the phrase "subject to Rule 20.01, subdivision 7(A)" in the last sentence of subdivision 7(A)(2).[10] We agree. Although the parties' interpretations each

---

and only notice filing, but that dismissal was without prejudice, then the State could simply refile the case. This outcome would waste judicial resources if a new judge were assigned and required the child to restart the adjudication process.

[10] This sentence reads in its entirety: "Such a notice [of intention to prosecute] shall extend the suspension of proceeding for one (1) year from the date of filing subject to Rule 20.01, subdivision 7(A)."

imply that the phrase creates a loop, directing the juvenile court to the beginning of subdivision 7(A), they diverge on which parts of the subdivision are repeated within this loop.

One interpretation, advocated by D.J.F.-D., is that the phrase merely asks the juvenile court to assess whether the child has aged out of juvenile jurisdiction in the time since the State filed its one, and only, allowable notice of intention to prosecute. In other words, the loop is limited to applying subdivision 7(A)(1), which requires dismissal when the child ages out of juvenile jurisdiction.

The other proposed reading, advocated by the State, is that the loop directs the juvenile court to repeat the steps outlined in *both* subdivisions 7(A)(1) and 7(A)(2). On this reading, because subdivision 7(A)(2) extends the suspension of proceedings when the State files a notice within a year of an incompetency finding, with no explicit limit on the number of notices, the State may file more than one notice of intention to prosecute. We conclude that the State's reading is the only reasonable interpretation.

D.J.F.-D.'s reading would have the juvenile court consider only whether, since the State's notice filing, the child has aged out of juvenile jurisdiction under subdivision 7(A)(1). As previously discussed, we read the phrase "the finding of the child's incompetency" to mean the initial, *and* any subsequent, findings. Under our interpretation, D.J.F.-D.'s reading impermissibly precludes the juvenile court's application of subdivision 7(A)(2), ignoring the language that permits the notice filing and extends the suspension of proceedings an additional year.

19

In other words, if D.J.F.-D. is correct and the rule permits the State to file only one notice, requiring the proceedings' dismissal upon the earlier of (1) when the child ages out of juvenile jurisdiction, or (2) 1 year after the State's notice (assuming one is filed), then the "subject to" phrase is superfluous, as the rule would operate as D.J.F.-D. suggests without that language. *See, e.g.*, *In re Welfare of J.J.P.*, 831 N.W.2d 260, 267 (Minn. 2013) (rejecting the State's claim that the phrase "the court may expunge the adjudication of delinquency" permits the expungement of *only* judicial, rather than executive, files, because that interpretation fails to effectuate the word "expunge"). This reading is unreasonable under our interpretive framework, which requires us to give effect to a rule's language in its entirety. *See Dahlin*, 753 N.W.2d at 306 ("[W]henever it is possible, no word, phrase, or sentence should be deemed superfluous, void, or insignificant." (citation omitted) (internal quotation marks omitted)).

Similarly, if the rule's drafters merely intended to reinforce that the juvenile court must consider whether the child aged out within a year of the State's notice filing, the language could simply read "subject to Rule 20.01, *subdivision 7(A)(1)*." Other provisions in Rule 20 cross-reference the rule's subsections with varying degrees of specificity. *See* Minn. R. Juv. Delinq. P. 20.01, subd. 5(B) ("If the offense is a gross misdemeanor . . . the court has the discretion to dismiss or suspend the proceedings . . . except as provided by *Rule 20.01, subdivision 7*." (emphasis added)); Minn. R. Juv. Delinq. P. 20.02, subd. 7(D)(2) ("A court trial in an extended jurisdiction juvenile proceeding shall be conducted pursuant to *Rule 20.02, subdivision 7(D)(1)*." (emphasis added)).

Because the drafters could have, but did not, limit the juvenile court's consideration to whether the juvenile aged out during an extension by citing to subdivision 7(A)(1) only, D.J.F.-D.'s interpretation of the phrase is unreasonable. *See Hohenwald*, 815 N.W.2d at 830–31 (concluding "the criminal proceedings" means the present criminal proceedings, rather than uncharged or other cases, because the drafters could have, but did not, write the rule more broadly); *see also In re Welfare of J.J.P.*, 831 N.W.2d at 266–67 (concluding "adjudication of delinquency" refers only to the order, rather than the record, because the Legislature could have drafted the statute broadly, as evidenced by statutes referring to "adjudication of delinquency" specifically, versus "criminal records" generally).[11]

The State's interpretation, in contrast, gives effect to the rule in its entirety. It suggests, and the court of appeals held, that the phrase "subject to Rule 20.01, subdivision 7(A)" creates a "loop" when the State files a notice. This loop requires dismissal when (1) the child ages out of juvenile jurisdiction; or (2) 1 year has passed since the most recent

---

[11] The dissent at the court of appeals raised the argument that, under the State's interpretation, each new finding of a child's incompetency tolls the time for the State to file its notice. *In re Welfare of D.J.F.-D.*, 986 N.W.2d at 30 n.1. This interpretation suggests that the State would never need to file more than one notice, so long as the juvenile court makes new findings of incompetency at 6-month intervals, as occurred here. *Id.*

We do not share this concern because this tolling need not occur in every instance. For example, a juvenile court may decide to (1) not make a new finding of incompetency within a year of the most recent finding, or to (2) make a new finding of incompetency more than a year after the most recent finding. Subdivision 6 contemplates this possibility, requiring the juvenile court to receive updates on the child's competency "at least every six (6) months *unless otherwise ordered*." Minn. R. Juv. Delinq. P. 20.01, subd. 6. In fact, here the juvenile court "otherwise ordered" that D.J.F.-D. undergo an updated competency evaluation, and scheduled the corresponding review hearing, in approximately 12-months' time after a licensed psychologist opined that he was unlikely to regain competency within the typical, 6-month period.

incompetency finding with no notice filed. Under this interpretation, the State may file a notice of intention to prosecute after any finding of incompetency, because subdivision 7(A) limits neither the number of permissible notice filings, nor which finding of incompetency a notice may follow.

Because the text does not otherwise limit the number of notices that the State may file, and the phrase "subject to Rule 20.01, subdivision 7(A)" directs the juvenile court to repeat the steps of subdivisions 7(A)(1) *and* 7(A)(2), we conclude that Rule 20.01, subdivision 7(A) permits the State to file more than one notice of intention to prosecute a child found incompetent to proceed. The State may extend the suspension of proceedings through notice filing, up until the child ages out of juvenile jurisdiction. Of course, the State's ability to extend gross misdemeanor proceedings until the child ages out of juvenile jurisdiction is limited by the juvenile court's discretion to dismiss the case at any time and is contingent upon the juvenile court issuing a finding of incompetency within 1 year of the State's prior filing of notice. *See* Minn. R. Juv. Delinq. P. 20.01, subd. 5(B).

\*     \*     \*

Lastly, we direct the Juvenile Rules Advisory Committee to propose amendments to Rule 20.01, subdivision 7(A), and any related subdivisions, that will promote clear, consistent practice and procedures in these juvenile court cases. The Committee is not, however, required to propose amendments to Rule 20.01 that reflect our present interpretation if it concludes that other amendments would best serve the applicable policy interests, including, but not limited to, those mentioned above.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.